UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF NORTH CAROLINA
DURHAM DIVISION

| | | |
|---|---|---|
| IN RE | ) | Case No. 09-81362 |
| Kristie Dalton Davis and | ) | |
| Matthew Thomas Davis, | ) | Chapter 13 |
| | ) | |
| Debtors. | ) | |
| | ) | |

## **OBJECTION TO CONFIRMATION and TO VALUE**

GMAC Mortgage, LLC (hereinafter "GMAC"), seeking relief against Kristie Dalton Davis and Matthew Thomas Davis (hereinafter "Debtors"), moves the Court and respectfully shows as follows:

## **PARTIES AND JURISDICTION**

1.      GMAC is a corporation duly organized and operating under the laws of the State of Pennsylvania, with an office location in Horsham, Pennsylvania.

2.      The Debtors are citizens and residents of Person County, North Carolina.

3.      The Court has jurisdiction over this proceeding, pursuant to 28 U.S.C. § 1334, and the "Referral Order" entered herein by the Chief United States District Court Judge for the Middle District of North Carolina. The Court also has jurisdiction over this proceeding, pursuant to 28 U.S.C. §§ 151 and 157(b) in that it is a "core proceeding."

## **ALLEGATIONS**

4.      On or about April 24, 2008, Debtors executed and delivered to Integrated Mortgage Strategies, LTD a certain Note in the original sum of $95,993.00. Also on or about April 24, 2008, Debtors executed and delivered to Integrated Mortgage Strategies, LTD a certain Deed of Trust, thereby granting Integrated Mortgage Strategies, LTD a lien or encumbrance on the real property as described therein and known as 2774 Lucy Garrett Road, Timberlake, NC 27583 (hereinafter "real property"). On April 25, 2008, the foregoing Deed of Trust was properly filed with the Register of Deeds of Person County, North Carolina. GMAC is the current owner and holder of the Note and Deed of Trust.

5.      On or about August 12, 2009, the Debtors filed a petition under Chapter 13 of the United States Bankruptcy Code. GMAC has an allowed secured claim in this case in the amount of $98,838.14. A true and correct copy of the filed proof of claim, Note and Deed of Trust is attached hereto and indentified as Exhibit "A".

6.      Upon information and belief, the Person County, North Carolina Tax Administrative office appraised the fair market value of the real property at $105,310.00. GMAC herein asserts based upon its information and belief that the real property has a fair market value of a minimum of $105,000.00.

7.      The Debtors allege that the fair market value of the real property is $44,106.00. The Plan alleges that GMAC has a security interest in the Debtor's "mobile home, land and escrow" and as such entitles the Debtors to modify the terms of the Note without the prohibition of the anti-modification provision

of 1322(b)(2). The Plan proposes to bifurcate GMAC's claim by paying the full value of the GMAC of $44,106.00 with the balance of GMAC's claim being paid as a general unsecured claim. The Plan, as proposed, does not propose payment through the Trustee of post-petition taxes on the real property or the payment of any post-petition insurance protecting GMAC's security interest from any loss.

8. GMAC is herein objecting to confirmation under the proposed payment of its allowed secured claim of $98,838.14 and to the value alleged by the Debtor's Plan. GMAC is not herein waiving its right to service, service of process and any due process guarantees under North Carolina law and Federal or Constitutional law. The Plan, if confirmed, will determine the nature and extent of GMAC's lien by this attack on the validity, priority, or extent of the GMAC lien. In addition, the plan, if confirmed as proposed, would stay GMAC's ability to oppose a declaratory judgment by the Debtor or Trustee finding that GMAC's lien is satisfied upon entry of the discharge in this case.

9. GMAC hereby requests that it be provided an opportunity to have a licensed real estate appraiser be given access to the real property to conduct a full appraisal. The undersigned is willing to help facilitate a date and time for the appraisal or will provide the Debtors' Attorney the Appraiser direct contact information to request and coordinate a date and time for the appraisal to be conducted.

10. GMAC hereby gives notice that it may submit a declaration or affidavit regarding any issue(s) raised in this contested matter in accordance with Rules 803(6), 902(11), and 902(12) of the Federal Rules of Evidence.

WHEREFORE, GMAC prays the Court as follows:

1. That the Court conduct a hearing on GMAC's Objection to Confirmation and Objection to the Value of the Real Property and deny confirmation of the Plan;

2. That GMAC be allowed access to the real property to perform a full appraisal of the real property prior to any final hearing on the merits as to the value of the real property; and

3. That GMAC be allowed its reasonable attorneys' fees to the extent allowed under 11 U.S.C. § 506(b).

Dated: November 6, 2009

KELLAM & PETTIT, P.A.
Attorneys for GMAC Mortgage, LLC


By: _____
Matthew T. McKee
NC Bar No.: 28675
Suite 300
2701 Coltsgate Road
Charlotte, N.C. 28211
Telephone: (704) 442-9500
Fax: (704) 442-8453
Email: notices@kellampettit.com

FORM B10 (Official Form 10) (12/07)

| United States Bankruptcy Court Middle District of North Carolina | PROOF OF CLAIM |
|---|---|

| Name of Debtor     **Matthew Davis** | Case Number     09-81362 |
|---|---|

**NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.**

Name of Creditor (The person or other entity to whom the debtor owes money or property):
**GMAC Mortgage, LLC**

Name and address where notices should be sent:
1100 Virginia Drive
Fort Washington, PA 19034
Telephone number:

☐ Check this box to indicate that this claim amends a previously filed claim.

**Court Claim Number:** _____
*(If known)*

Filed on: _____

Name and address where payment should be sent *(if different from above)*:
GMAC Mortgage, LLC
Attn: Mail Code 507-345-110
3451 Hammond Avenue
Waterloo, IA 50702

Telephone number:

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

---

1. **Amount of Claim as of Date Case Filed:**    $ ___98838.14___

   If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.

   If all or part of your claim is entitled to priority, complete item 5.

   ☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

2. **Basis for Claim:** _____money loaned_____
   *(See instruction #2)*

3. **Last four digits of any number by which creditor identifies debtor:** ___5021___

   **3a. Debtor may have scheduled account as:** _____
   *(See instruction #3a)*

4. **Secured Claim** *(See instruction #4)*
   Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.

   Nature of property or right of setoff: ☑ Real Estate    ☐ Motor Vehicle    ☐ Other
   Describe: 2774 Luch Garrett Rd., Timberlake, NC

   Value of Property: $_____ Annual Interest Rate: ___%

   Amount of arrearage and other charges *as of time case filed* included in secured claim, if any: $ _3945.27_ Basis for perfection: _____

   Amount of Secured Claim: $___98838.14___ Amount Unsecured: $_____

5. **Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.**

   Specify the priority of the claim.

   ☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).

   ☐ Wages, salaries, or commissions (up to $10,950*), earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. § 507(a)(3).

   ☐ Contributions to an employee benefit plan – 11 U.S.C. § 507(a)(4).

   ☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. § 507(a)(6).

   ☐ Taxes or penalties owed to governmental units – 11 U.S.C. § 507(a)(8).

   ☐ Other – Specify applicable paragraph of 11 U.S.C. § 507(a)(_).

   **Amount entitled to priority**
   $ _____

   * *Amounts are subject to adjustment on 4/1/2010 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

---

6. **Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

7. **Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. *(See definition of "redacted" on reverse side.)*

**FOR COURT USE ONLY**

**FILED**
U.S. Bankruptcy Court
Middle District of NC

9/3/2009

Reid Wilcox, Clerk

| Date
9/3/2009 | Print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any): **s/ Matthew T. McKee NCSB 28675** |
|---|---|

*Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.*



EXHIBIT
A

**ATTACHMENT TO THE PROOF OF CLAIM:**

Kristie Dalton Stanley Davis
Case No. 09-81362
Chapter 13

**ARREARAGES:**

| | | |
|---|---|---|
| 1. | 4 Payment(s) Due @ $839.22 | $3,356.88 |
| | ( from 06/01/2009 through 09/01/2009 ) | |
| 2. | Accrued Late Charges | $100.68 |
| 3. | Escrow Shortage | $476.46 |
| 4. | Property Inspections | $11.25 |
| | | |
| | TOTAL ARREARAGES DUE: | $3,945.27 |

| UNITED STATES BANKRUPTCY COURT **MIDDLE** DISTRICT OF **NORTH CAROLINA** | **PROOF OF CLAIM** |
|---|---|

| Name of Debtor:<br>KRISTIE DALTON  STANLEY DAVIS | Case Number:<br>09-81362 |
|---|---|

NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

| | |
|---|---|
| Name of Creditor (the person or other entity to whom the debtor owes money or property):<br>GMAC Mortgage, LLC | ☐ Check this box to indicate that this claim amends a previously filed claim. |
| Name and address where notices should be sent:<br>GMAC Mortgage, LLC<br>1100 Virginia Drive<br>Fort Washington, PA 19034 | **Court Claim Number:** _____<br>*(If known)* |
| Telephone number: | Filed on: |
| Name and address where payment should be sent (if different from above):<br>GMAC Mortgage, LLC<br>Attn: Mail Code 507-345-110<br>3451 Hammond Avenue<br>Waterloo, Iowa 50702<br>Telephone number: | ☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.<br><br>☐ Check this box if you are the debtor or trustee in this case. |

**1. Amount of Claim as of Date Case Filed: $ $98,838.14**

If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.

If all or part of your claim is entitled to priority, complete item 5.

☐ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges.

**2. Basis for Claim:** _____money loaned_____
(See instruction #2 on reverse side.)

**3. Last four digits of any number by which creditor identifies debtor: 5021**

    **3a. Debtor may have scheduled account as:** _____
    (See instruction #3a on reverse side.)

**4. Secured Claim (See instruction #4 on reverse side.)**
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.

Nature of property or right of setoff: ☒ Real Estate    ☐ Motor Vehicle    ☐ Other
Describe:

**Value of Property: Unknown** Annual Interest Rate ___%

Amount of arrearage and other charges as of time case filed included in secured claim,

if any: **$3,945.27** Basis for perfection: _____

Amount of Secured Claim: **$98,838.14** Amount Unsecured: **$.00**

**6. Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

**7. Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. *(See definition of "redacted" on reverse side.)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.**

Specify the priority of the claim.

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. §507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).

☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(___).

**Amount entitled to priority:**

$_____

*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

| Date: | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.<br>Matthew T. McKee bar # 28675<br>2701 Coltsgate Road, Suite 300, Charlotte, NC 28211 Phone (704) 442-9500 | FOR COURT USE ONLY |
|---|---|---|

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

# NOTE

FHA Case No

| April 24, 2008 | Timberlake | North Carolina |
|:---:|:---:|:---:|
| *[Date]* | *[City]* | *[State]* |

2774 Lucy Garrett Rd, Timberlake, NC 27583
*[Property Address]*

**1. PARTIES**

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means **Integrated Mortgage Strategies, LTD** and its successors and assigns.

**2. BORROWER'S PROMISE TO PAY; INTEREST**

In return for a loan received from Lender, Borrower promises to pay the principal sum of **Ninety Five Thousand Nine Hundred Ninety Three and 00/100ths** Dollars (U.S. **$95,993.00**), plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of **Six and 500/1000ths** percent (**6.500%**) per year until the full amount of principal has been paid.

**3. PROMISE TO PAY SECURED**

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." That Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

**4. MANNER OF PAYMENT**

**(A) Time**

Borrower shall make a payment of principal and interest to Lender on the first day of each month beginning on **June 1, 2008.** Any principal and interest remaining on the first day of **May, 2038**, will be due on that date, which is called the "Maturity Date."

**(B) Place**

Payment shall be made at **PO Box 780, Waterloo, IA 50704** or at such place as Lender may designate in writing by notice to Borrower.

**(C) Amount**

Each monthly payment of principal and interest will be in the amount of **$606.74**. This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.

**(D) Allonge to this Note for payment adjustments**

If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note. [Check applicable box]

☐ Graduated Payment Allonge   ☐ Growing Equity Allonge   ☐ Other [specify]

**EXHIBIT**

Case 09-81362   Doc 20   Filed 11/06/09   Page 6 of 21

5. **BORROWER'S RIGHT TO PREPAY**

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

6. **BORROWER'S FAILURE TO PAY**

**(A) Late Charge for Overdue Payments**

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of Four and 00/100ths percent (4.000%) of the overdue amount of each payment.

**(B) Default**

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

**(C) Payment of Costs and Expenses**

If Lender has required immediate payment in full as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

7. **WAIVERS**

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

8. **GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

9. **OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

©2001, The Compliance Source, Inc.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_Kristie D Stanley_ (Seal)
KRISTIE D STANLEY                    -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

[Sign Original Only]

Multistate FHA Fixed Rate Note
—THE COMPLIANCE SOURCE, INC.—
www.compliancesource.com

Page 3 of 3

©2004, The Compliance Source, Inc.



MTGR

FILED in PERSON County, NC
on Apr 25, 2008 at 11:01:38 AM
by: AMANDA W. GARRETT
REGISTER OF DEEDS
Book 675 Page 246

——————————————————[Space Above This Line For Recording Data]——————————————————

FHA Case No.

Loan No.:

MIN:

# NORTH CAROLINA DEED OF TRUST

After recording please return to:
GMAC Bank
[Name]
Post Closing Department Table Funding Closing MC
19-FTW-M25
[Attention]
1100 Virginia Drive Ste 25
[Street Address]
Fort Washington, PA  19034
[City, State  Zip Code]

Parcel ID Number:

     THIS DEED OF TRUST ("Security Instrument") is made on April 24, 2008. The grantor is **KRISTIE D STANLEY, a single woman** ("Borrower"). The trustee is **Daniel R. Long, Jr.** ("Trustee"). The lender is **Integrated Mortgage Strategies, LTD,** which is organized and existing under the laws of North Carolina, and whose address is **4700 Six Forks Road Suite 120, Raleigh, NC 27609** ("Lender"). The name of the Mortgage Broker is **Integrated Mortgage Strategies Ltd.** The beneficiary under this Security Instrument is Mortgage Electronic Registration Systems, Inc. ("MERS"). MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS. Borrower owes Lender the principal sum of Ninety Five Thousand Nine Hundred Ninety Three and 00/100ths Dollars (U.S. $95,993.00).

    This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on May 1, 2038.

    This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under Paragraph 7 to protect the security of this Security Instrument; and (c) the performance of





EXHIBIT
B

Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee and Trustee's successors and assigns, in trust, with power of sale, the following described property located in **PERSON** County, North Carolina:

*See attached Exhibit A*

which currently has the address of 2774 Lucy Garrett Rd

[Street]

**Timberlake**                          , North Carolina 27583                          ("Property Address"):

[City]                                   [Zip Code]

TO HAVE AND TO HOLD this property unto Trustee and Trustee's successors and assigns, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THE SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

2. **Monthly Payment of Taxes, Insurance and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under Paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. § 2601 et seq. and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

North Carolina Deed of Trust                                                                                          Closing
FHA MERS Modified
The Compliance Source, Inc.                          Page 2 of 8                          2/02 Rev. 02/08
www.compliancesource.com                                                      ©2002, The Compliance Source, Inc.

Case 09-81362    Doc 20    Filed 11/06/09    Page 10 of 21

# EXHIBIT A

BEING that certain lot or parcel of land lying in Flat River Township, Person County, North Carolina, adjoining and lying to the South of the center of the right of way of S. R. 1703 and being all of what is shown, depicted and described as "**1.07 Ac.**" on that plat of survey entitled "**Property of BERNARD CARROLL DANIEL & ESTHER RHEW DANIEL,**" as surveyed and prepared by Hall-Hamlett and Associates under the supervision of Neal C. Hamlett, R.L.S. #2465, dated March, 1987; which plat, of record in **Plat Cabinet 4, Page 416, Person County Registry,** is hereby specifically incorporated by reference as an integral part of this description for more particularity as to metes and bounds, courses and distances.

Said lot or parcel of land is subject to the right of way of S. R. 1703 as shown on the above-referenced plat of survey.

Located upon and permanently affixed unto the above-described real property is a **2000 Oakwood Manufactured Home bearing Vehicle Identification Number HONC02236731A/B.**

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

3. **Application of Payments.** All payments under Paragraphs 1 and 2 shall be applied by Lender as follows:

<u>First</u>, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

<u>Second</u>, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

<u>Third</u>, to interest due under the Note;

<u>Fourth</u>, to amortization of the principal of the Note; and

<u>Fifth</u>, to late charges due under the Note.

4. **Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order of Paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in Paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

5. **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear expected. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited

North Carolina Deed of Trust
FHA MERS Modified
The Compliance Source, Inc.               Page 3 of 8
www.compliancesource.com

Closing

/02 Rev. 02/08
©2002, The Compliance Source, Inc.

to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

6. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in Paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in Paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

7. **Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in Paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by Paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in Paragraph 2.

Any amounts disbursed by Lender under this Paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

8. **Fees.** Lender may collect fees and charges authorized by the Secretary.

9. **Grounds for Acceleration of Debt.**

(a) **Default.** Lender may, except as limited by regulations issued by the Secretary in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

(b) **Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including section 341(d) of the Garn-St Germain Depository Institutions Act of 1982, 12 U.S.C. § 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all the sums secured by this Security Instrument if:

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property, but his or her credit has not been approved in accordance with the requirements of the Secretary.

North Carolina Deed of Trust
FHA MERS Modified
The Compliance Source, Inc.
www.compliancesource.com

Closing

Page 4 of 8

'02 Rev. 02/08
©2002, The Compliance Source, Inc.

(c) **No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

(d) **Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(e) **Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

10. **Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

11. **Borrower Not Released; Forbearance by Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

12. **Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of Paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the term of this Security Instrument or the Note without that Borrower's consent.

13. **Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this Paragraph.

14. **Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

15. **Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

16. **Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this Paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this Paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

17. **Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this Paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

18. **Foreclosure Procedure.** If Lender requires immediate payment in full under Paragraph 9, Lender may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, and if it is determined in a hearing held in accordance with applicable law that Trustee can proceed to sale, Trustee shall take such action regarding notice of sale and shall give such notice to Borrower and to other persons as applicable law may require. After the time required by applicable law and after publication of the notice of sale, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, Trustee's fees of 5.000% of the gross sale price; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

Case 09-81362    Doc 20    Filed 11/06/09    Page 15 of 21

The interest rate set forth in the Note shall apply whether before or after any judgment on the indebtedness evidenced by the Note.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. § 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.

19. **Release.** Upon payment of all sums secured by this Security Instrument, Lender or Trustee shall discharge and release this Security Instrument. If Trustee is requested to release this Security Instrument, all notes evidencing debt secured by this Security Instrument shall be surrendered to Trustee. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under applicable law.

20. **Substitute Trustee.** Lender may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder by an instrument recorded in the county in which this Security Instrument is recorded. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by applicable law.

21. **Attorneys' Fees.** Attorneys' fees must be reasonable.

22. **Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)]

☐ Condominium Rider   ☐ Graduated Payment Rider
☐ Planned Unit Development Rider   ☐ Growing Equity Rider
☒ Other [specify] **Manufactured Housing Unit Rider to the Security Instrument (Unit to Become Affixed)**

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

_Kristie D Stanley_ (Seal)
KRISTIE D STANLEY   -Borrower
[Printed Name]

_____ (Seal)
-Borrower
[Printed Name]

_____ (Seal)
-Borrower
[Printed Name]

_____ (Seal)
-Borrower
[Printed Name]

Case 09-81362   Doc 20   Filed 11/06/09   Page 16 of 21

## ACKNOWLEDGMENT

State of North Carolina    §
   §
County of Person    §

I, „ do hereby certify that **KRISTIE D STANLEY** personally appeared before me this day and acknowledged the due execution of the foregoing instrument.

Witness my hand and official seal this the 24th day of April, 2008

_Christy E Pruett_
Signature of Officer

_Christy E. Pruett_
Printed Name

_Notary Public_
Title of Officer

My Commission Expires: 11·30·2012

Document shows proof /acknowledgement before officer authorized to take proof /acknowledgement; acknowledgement includes officer's signature, commission expiration date, official seal, if required.
_a W garrett_
Amanda W. Garrett, Person County Register of Deeds

North Carolina Deed of Trust
FHA MERS Modified
The Compliance Source, Inc.
www.compliancesource.com

Page 8 of 8

Closing

Rev. 02/08
©2002, The Compliance Source, Inc.

BOOK 675 PAGE 255 316457

Loan No.:

**(Attach to Security Instrument)**

# MANUFACTURED HOUSING UNIT RIDER TO THE MORTGAGE / DEED OF TRUST / SECURITY INSTRUMENT
## (Manufactured Housing Unit to Become Affixed)

THIS RIDER is made this 24th day of **April, 2008**, and is incorporated into and shall be deemed to amend and supplement the Mortgage/Deed of Trust/Security Instrument (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to **Integrated Mortgage Strategies, LTD** (the "Note Holder") of the same date (the "Note") and covering the land described in the Security Instrument as:

*[Legal Description]*

which currently has the address of:

**2774 Lucy Garrett Rd, Timberlake, NC 27583**
*[Property Address]*

together with the Manufactured Housing Unit described as follows which shall be a part of the real property:

| | |
|---|---|
| Make: | **Oakwood** |
| Model: | **2000** |
| Year: | **2000** |
| Vehicle Identification and/or Serial Number(s): | **HONC02236731A/B** |
| Width & Length: | x |

**MODIFICATIONS.** In addition to the covenants and agreements made in the Security Instrument, Borrower(s) further covenant and agree as follows, for themselves, their heirs and assigns to the Note Holder:



Case 09-81362   Doc 20   Filed 11/06/09   Page 18 of 21

**A.** **Property:**

"Property" shall encompass the Manufactured Housing Unit described above that is or that will become affixed to the land legally described herein.

**B.** **Additional Covenants of Borrower(s):**

(a) Borrower(s) covenant and agree that Borrower(s) will comply with all State and local laws and regulations regarding the affixation of the Manufactured Housing Unit to the land described herein including, but not limited to, surrendering the Certificate of Title (if required) and obtaining the requisite governmental approval and accompanying documentation necessary to classify the Manufactured Housing Unit as real property under State and local law.

(b) Borrower(s) covenant and agree that the Manufactured Housing Unit described above shall be, at all times, and for all purposes, permanently affixed to and part of the land legally described herein and shall not be removed from said land.

(c) Borrower(s) covenant and agree that affixing the Manufactured Housing Unit to the land legally described herein does not violate any zoning laws or other local requirements applicable to manufactured homes.

(d) In the event state or local law does not provide for a surrender of title, Borrower grants Lender a security interest in the Manufactured Housing Unit and shall execute such documents as Lender may request to evidence Lender's security interest therein.

Case 09-81362   Doc 20   Filed 11/06/09   Page 19 of 21

BY SIGNING THIS, Borrower(s) agree to all of the above.

_Kristie D Stanley_ (Seal)
**KRISTIE D STANLEY** -Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

Manufactured Housing Unit Rider to the Mortgage/Deed of Trust/Security Instrument
(Manufactured Housing Unit to Become Affixed) (Multistate)
—THE COMPLIANCE SOURCE, INC.—                    Page 3 of 3                    rev. 09/05
www.compliancesource.com                                              ©2005, The Compliance Source, Inc.

1468.0001519

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF NORTH CAROLINA
DURHAM DIVISION

| | |
|---|---|
| IN RE | ) Case No. 09-81362 |
| | ) |
| Kristie Dalton Davis and | ) Chapter 13 |
| Matthew Thomas Davis, | ) |
| | ) |
| Debtors. | ) |
| | ) |

## CERTIFICATE OF SERVICE

I, as attorney of record for GMAC Mortgage, LLC, hereby certify that on the 5th day of November, 2009, I served a copy of the Objection to Confirmation by either electronic notice in accordance with the local rules or by depositing the same, enclosed in a postpaid, properly addressed wrapper, in an official depository under the exclusive care and custody of the United States Postal Service, said envelope being addressed as follows:

Kristie Dalton Davis                                  Debtors
Matthew Thomas Davis
2774 Lucy Garrett Road
Timberlake, NC 27583

John T. Orcutt, Esq.                                  Attorney for the Debtors
6616-203 Six Forks Road
Raleigh, NC 27615

Richard M. Hutson,II, Esq.                            Trustee
P.O. Box 3613
Durham, NC 27702-3613

KELLAM & PETTIT, P.A.
Attorneys for GMAC Mortgage, LLC

By: _____
Matthew T. McKee
NC Bar No.: 28675
Suite 300
2701 Coltsgate Road
Charlotte, N.C. 28211
Telephone: (704) 442-9500